UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE GOODMAN,

        Plaintiff,

Case No. 1:10-CV-784

Hon. Robert J. Jonker

v.

MICHAEL CURLEY, *et al.*,

        Defendants.
        _____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant Warden Michael Curley's motion for summary judgment (docket no. 24).

**I.    Background**

Plaintiff filed a complaint naming three defendants. Compl. (docket no. 1). On initial screening pursuant to the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321(1996), the court dismissed all defendants except Warden Michael Curley. *See* Opinion and Order (docket nos. 5 and 6). Pending before the court are plaintiff's allegations that Warden Curley retaliated against him in violation of the First Amendment. The court's opinion screening the complaint summarized plaintiff's allegations as follows:

> Plaintiff presently is incarcerated at SCI Greene in Waynesburg Pennsylvania, but the event giving rise to his complaint occurred while he was incarcerated in the Muskegon Correctional Facility (MCF). In his pro se complaint, Plaintiff sues the following MCF employees: Warden Michael Curley, Sergeant (unknown) Tillman and Physician Assistant Thomas LaNore.
>
> Plaintiff claims that Defendant LaNore changed his medication on March 4, 2010. More than two weeks later, on March 22, 2010, Plaintiff went to the medical

> department because he was experiencing heart palpitations and was having difficulty breathing. The nurse scheduled Plaintiff to see the doctor the following day and sent Plaintiff back to his housing unit. Plaintiff saw Defendant LaNore on March 23, 2010. LaNore told Plaintiff that there was nothing he could do because Plaintiff no longer was experiencing symptoms. On March 29, 2010, Plaintiff awoke to find that his face and neck were severely swollen. Plaintiff was sent immediately to the medical department, where Dr. Haynes ordered the discontinuation of the medication prescribed by LaNore because Plaintiff was having an allergic reaction. Dr. Haynes also ordered Benadryl to reduce the swelling.
>
> Plaintiff asked a corrections officer if they could take a photo of his face and neck to document the swelling. After the photo was taken at the control center, Plaintiff asked for a copy. Defendant Tillman told Plaintiff that the photo was a court document, but that he could write a request to the medical department for a copy. The following day, however, Tillman told Plaintiff that the photo had been deleted and that Tillman had forgotten to send it to the medical department because a fight had broken out. Plaintiff filed grievances against Defendants LaNore and Tillman.
>
> On May 25, 2010, Plaintiff was informed that he was being transferred back to Pennsylvania. Plaintiff claims that a few weeks before the transfer he spoke to Defendant Curley about his medical problem and Curley responded "that anyone who put [sic] grievance on his medical staff was going back to Pennsylvania because Pennsylvania [sic] was there to enjoy the privileges that the jail give[s] the inmates, not to sue his medical staff." (Compl., Page ID#5.) Plaintiff claims that he was returned to a supermax facility in Pennsylvania and placed in the administrative segregation unit.
>
> Plaintiff claims that Defendant LaNore was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. He further contends that Defendant Tillman violated his Fourteenth Amendment due process rights and interfered with his right of access to the courts when he deleted the photo of Plaintiff's swollen face and neck. In addition, Plaintiff claims that Defendant Curley transferred him to a supermax facility in Pennsylvania in retaliation for filing grievances. Plaintiff also claims that his transfer violated his Fourteenth Amendment due process rights.
>
> Plaintiff seeks declaratory relief and monetary damages.

Opinion at pp. 2-3.

### III. Warden Curley's motion for summary judgment

### A. Legal Standard

Warden Curley has moved for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Failure to exhaust

### 1. Exhaustion requirement

The PLRA, 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Plaintiff failed to properly exhaust a grievance regarding retalation

Warden Curley has provided a copy of a grievance filed by plaintiff on March 30, 2010, which is related to his medical treatment. *See* Grievance No. MCF-2010-04-0135-12d1 (docket no. 21-2). However, this grievance pre-dates the retaliatory act at issue in this action, which allegedly occurred on May 25, 2010. In an affidavit filed in support of the motion, Richard B. Stapleton, the MDOC's Administrator for the Office of Legal Affairs and is "second-line supervisor

of the Grievance Section with overall responsibility for Step III grievance decisions," his affidavit, Mr. Stapleton stated that he has searched the MDOC's database and found that plaintiff did not file any grievances through Step III. Richard Stapleton Affidavit at ¶¶ 1, 13-14 (docket no. 21-4). This record establishes that plaintiff did not exhaust any grievances related to his incarceration at the MDOC. Warden Curley points out that plaintiff took some action related to his Michigan incarceration after his transfer back to Pennsylvania. Specifically, on June 14, 2010, plaintiff requested finds to mail an "appeal" to the MDOC's Director. *See* Pennsylvania Department of Corrections Cash Slip (docket no. 21-5). The record is mute as to the nature of the "appeal" or whether it was sent.

Plaintiff's only response to the motion was an unsworn "declaration" in which plaintiff stated:

> Lets [sic] assume the judicial systems of Michigan utilize a process called the, "**Prison Litigation Reform Act**," existed then Mr. Goodman has done all he could do all in his power while at Michigan, as it pertain [sic] to making a paper trail by way of grievance until the moment Plaintiff was retaliated against by sending him back to S.C.I. - Greene in Pennsylvania in an attempt to sweep the situation under the rug.

Declaration (docket no. 28). Plaintiff's cryptic, unsworn response does not explain what efforts, if any, he employed to file a grievance against Warden Curley related to the alleged retaliation.

Plaintiff has failed to rebut or contradict Mr. Stapleton's sworn statement that plaintiff failed to exhaust *any* grievance through Step III. Viewing the evidence in the light most favorable to plaintiff, the record reflects that he failed to properly exhaust a grievance against Warden Curley with respect to his claim of retaliation. *See Jones*, 549 U.S. at 218; *Woodford*, 548

U.S. at 90-91.  Accordingly, Warden Curley is entitled to summary judgment on grounds of lack of exhaustion.[1]

### IV.    Recommendation

For the reasons set forth above, I respectfully recommend that Warden Curley's motion for summary judgment (docket no. 24) be **GRANTED** for failure to exhaust administrative remedies and that this action be **DISMISSED**.


Dated:  November 7, 2011                                         /s/ Hugh W. Brenneman, Jr.
                                                                 HUGH W. BRENNEMAN, JR.
                                                                 United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[1] Warden Curley also seeks summary judgment on grounds of qualified immunity.  Because plaintiff failed to properly exhaust his administrative remedies, and has failed to meet the precondition for filing this action under 42 U.S.C. § 1997e(a), it is unnecessary to perform any further review of his complaint. Nevertheless, the court notes that defendant's claim for qualified immunity is not well-taken.  Government officials have qualified immunity from suit under § 1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Defendant argues that "[q]ualified immunity is warranted in this matter" because "[p]laintiff cannot prove the violation of a constitutional right since he failed to exhaust his administrative remedies."   Defendants' Brief at p. 10 (docket no. 25).  Defendant's argument is inapposite.  Whether a prisoner plaintiff complied with the exhaustion requirement under the PLRA is unrelated to the separate issue of whether a defendant government official is entitled to qualified immunity under the facts alleged in the complaint.